**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FIRST STATE INSURANCE COMPANY,
NEW ENGLAND INSURANCE
COMPANY, PENNSYLVANIA
INSURANCE COMPANY f/k/a
Pennsylvania General Insurance Company, as
alleged successor-in-interest for certain
limited purposes to certain liabilities of
American Employers Insurance Company and
SPARTA INSURANCE COMPANY, as
successor in interest for certain limited
purposes to certain liabilities of American
Employers Insurance Company,

        Case No.

        Plaintiffs,

v.

McCORD CORPORATION and
EMPLOYERS INSURANCE COMPANY
OF WAUSAU f/k/a Employers Mutual
Liability Insurance Company of Wisconsin,

        Defendants,

and

EVANSTON INSURANCE COMPANY, and
LEXINGTON INSURANCE COMPANY,

        Interested Party Defendants.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, FIRST STATE INSURANCE COMPANY ("First State"), NEW ENGLAND

INSURANCE COMPANY,  as successor in interest to New England Reinsurance Corporation

("New England") (collectively, First State and New England are referred to herein as "Hartford"),

PENNSYLVANIA INSURANCE COMPANY formerly known as PENNSYLVANIA

1

GENERAL INSURANCE COMPANY ("PIC") as alleged successor-in-interest for certain limited purposes to certain liabilities of American Employers Insurance Company and SPARTA INSURANCE COMPANY as successor in interest for certain limited purposes to certain liabilities of American Employers Insurance Company ("SPARTA"), for their Complaint for Declaratory Judgment against Defendants, MCCORD CORPORATION ("McCord") and EMPLOYERS INSURANCE COMPANY OF WAUSAU, formerly known as Employers Mutual Liability Insurance Company of Wisconsin ("Wausau"), Interested Party Defendant EVANSTON INSURANCE COMPANY ("Evanston"), as successor in interest to Associated International Insurance Company ("Associated" ), and Interested Party Defendant LEXINGTON INSURANCE COMPANY ("Lexington"), hereby state as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, wherein the Plaintiffs seek a declaratory judgment as to the parties' respective rights and obligations under: (a) umbrella liability insurance policies Hartford issued to McCord (and/or its predecessor) (the "Hartford Umbrella Policies"); (b) an umbrella liability policy issued by American Employers Insurance Company ("AEIC")((the "AEIC Umbrella Policy") issued to McCord (and/or its predecessor); and (c) various primary liability insurance policies issued by Wausau to McCord (and/or its predecessor) (the "Wausau Primary Policies").

2.      McCord has been identified as a potentially responsible party with respect to regulatory demands for the investigation and clean-up of hazardous substances or contaminants at two contaminated sites located in Indiana and one contaminated site located in Massachusetts (the "Underlying Claims").

3.      Wausau has asserted that all of the Wausau Primary Policies are subject to an "aggregate" limit of liability for property damage with respect to the Underlying Claims.

4.      Wausau further asserts that the Wausau Primary Policies are exhausted by claim payments made on behalf of McCord, and therefore, Wausau owes no further defense or indemnity obligations with respect to McCord's environmental liabilities for the Underlying Claims.

5.      Coverage, if any, under the Hartford Umbrella Policies and the AEIC Umbrella Policy does not attach unless and until the limit of liability of the applicable underlying Wausau Primary Policies are properly exhausted.

6.      Plaintiffs contend that, except for one policy year, none of the Wausau Primary Policies are subject to an aggregate limit of liability for the Underlying Claims.

7.      Plaintiffs further dispute whether Wausau has properly allocated claim payments to the applicable occurrence limits of liability on a *pro rata* by time-on-the-risk basis as required by controlling Michigan law, which Wausau successfully argued to this Court in prior coverage litigation is the law governing interpretation of, and allocation of payments under, the exact same Wausau Primary Policies at issue in this action for environmental liabilities such as those of the Underlying Claims.

8.      An actual and justiciable dispute exists between the parties with respect to (a) whether all but one of the Wausau Primary Policies contain an aggregate limit as opposed to a per occurrence limit, (b) whether Wausau has properly exhausted any of the Wausau Primary Policies; and (c) whether any or all Plaintiffs owe(s) any present coverage obligations under the Hartford Umbrella Policies or the AEIC Umbrella Policy with respect to the Underlying Claims; and (d) whether the Plaintiffs have any future coverage obligations under their respective umbrella insurance policies with respect to the Underlying Claims.

## THE PARTIES

9.      Plaintiff First State is a Connecticut corporation with its principal place of business located in Hartford, Connecticut.

10.     Plaintiff New England is a Connecticut corporation with its principal place of business located in Hartford, Connecticut.

11.     Plaintiff Pennsylvania Insurance Company, formerly known as Pennsylvania General Insurance Company, is a New Mexico corporation with headquarters in Omaha, Nebraska.

12.     Plaintiff SPARTA is a Connecticut Corporation having its principal place of business in Hartford, Connecticut.

13.     Defendant McCord is a Michigan corporation with its principal place of business located in Detroit, Michigan.

14.     Defendant Wausau is a Wisconsin corporation with its principal place of business located in Wausau, Wisconsin.

15.     Interested Party Defendant Evanston is an Illinois corporation with its principal place of business located in Deerfield, Illinois. Upon information and belief, Evanston is the successor in interest with respect to an umbrella insurance policy issued by Associated to McCord and/or its predecessor earing policy No. 050231 with an effective date of January 1, 1977 to January 1, 1978.

16.     Interested Party Defendant Lexington is a Massachusetts corporation with its principal place of business located in Boston, Massachusetts. Upon information and belief, Lexington issued to McCord and/or its predecessor an umbrella insurance policy bearing policy No. 5501822 with an effective date of January 1, 1977 to January 1, 1978.

4

## JURISDICTION AND VENUE

17.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because Plaintiffs, Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1), because Defendant McCord's main office is located within this judicial district.  In addition, venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because the claim for coverage arises out of policies of insurance issued and delivered to McCord in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

19.     The Court has personal jurisdiction over the McCord because it is a Michigan corporation and conducts business in the State of Michigan.

20.     The Court has personal jurisdiction over the Defendant Wausau because it is licensed to conduct business and transacts business in the State of Michigan, and the Wausau Primary Policies were issued in Michigan.

21.     The Court has personal jurisdiction over the Interested Party Defendants because they are licensed to conduct business and transact business in the State of Michigan, and issued their respective insurance policies to McCord and/or its predecessor in the State of Michigan.

## THE McCORD POLICIES

### A.     The Hartford Umbrella Policies

22.     Hartford issued the following umbrella insurance policies to McCord Corporation (the "Hartford Umbrella Policies"):

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| First State | 900305 | 02/01/1972 – 01/1/1975 |
| New England | 681199 | 01/01/1975 – 01/01/1978 |
| New England | 683658 | 01/01/1978 – 01/01/1979 |

5

23.     Copies of the Hartford Umbrella Policies located in Hartford's business records are attached hereto as Exhibits A through C.

24.     The Hartford Umbrella Policies were brokered in Michigan and issued to McCord at its headquarters located in Detroit, Michigan.

### First State Policy No. 900305 and New England Policy No. 681199

25.     First State Umbrella Policy No. 900305 and New England Umbrella Policy No. 681199 contain the following Insuring Agreements:

**INSURING AGREEMENTS**

**I.  Coverage**

The Company agrees to indemnify the Insured for ultimate net loss in excess of the retained limit hereinafter stated, subject to the limitations, conditions and other terms of this policy, which the Insured may sustain by reason of the liability imposed upon the Insured by law, or assumed by the Insured under contract, on account of:

*        *        *

(a)  Property Damage Liability
     For damages and expenses to which this insurance applies, because of injury to or destruction of tangible property, including consequential loss resulting therefrom, caused by an occurrence;

*        *        *

but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgment or settlement.

**II.  Retained Limit – Limit of Liability**

With respect to Coverage I(a), I(b), or I(c), or any combination thereof, the Company's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of:

(a)  An amount equal to the limits of liability indicated beside underlying policy(ies) listed in Schedule A hereof, plus the applicable limit(s) of any other underlying insurance collectible by the Insured or

(b)  The amount shown in Item 3 (B) of the Declarations as the result of any one occurrence not covered by the said policy(ies) or insurance:

and then for an amount not exceeding the amount shown in Item 3 of the Declarations as the result of any one occurrence.  There is no limit to the number of occurrences during the policy period for which claims may be made, except that the liability of the Company arising out of the products hazard, completed operations hazard or

6

occupational diseases of employees of the Named Insured on account of all occurrences during each policy year shall not exceed the amount shown in Item 3 of the Declarations as the result of any one occurrence.

In the event of the reduction or exhaustion of the aggregate limits(s) of liability of the underlying policy(ies) listed in Schedule A by reason of losses paid thereunder, this policy, subject to the above limitations, (1) in the event of reduction, shall pay the excess of the reduced underlying limit(s) or (2) in the event of exhaustion, shall continue in force as underlying insurance. The Company's total limit of liability, in respect to (1) and (2) above only, shall not exceed the single limit any one occurrence state in Item 3 of the Declarations on account of all occurrences happening during each annual period commencing with the effective date or anniversary date of the policy.

26.     First State Policy No.  900305 and New England Umbrella Policy No. 681199

contain the following relevant definitions:

## DEFINITIONS

**4. Ultimate Net Loss**
"Ultimate Net Loss" means the sum actually paid or payable in cash in the settlement or satisfaction of losses for which the Insured is liable either by adjudication or compromise with the written consent of the Company, including after making proper deduction for all recoveries and salvages collectible, all loss expenses and legal expenses (including attorneys' fees, court costs and interests on any judgment or award) but excludes all salaries of employees and office expenses of the Insured, the Company or any underlying insurer so incurred.
The policy shall not apply to defense, investigation, settlement or legal expenses covered by underlying insurance.

*        *        *

**8. Occurrence**
With respect to Coverages I(a) and I(b) "occurrence" shall mean an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

27.     Endorsement 1 to New England Policy 68199 contains the following pollution

exclusion:

**EXCLUSION**
**(Contamination or Pollution)**

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminant or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, releases or escape is sudden and accidental.

### New England Policy No. 683658

28.     New England Policy No. 683658 contains the following Insuring Agreements

whereby New England agrees:

**INSURING AGREEMENTS**
**I.  COVERAGE**

To indemnify the INSURED for ULTIMATE NET LOSS, as defined herein-after, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:
*        *        *
B.  PROPERTY DAMAGE, as hereinafter defined;
*        *        *
To which this policy applies, causes by an OCCURRENCE, as hereinafter as, happening anywhere in the world.

**II.  UNDERLYING LIMIT – RETAINED LIMIT**
The Company shall be liable on for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A.  UNDERLYING LIMIT – an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B.  RETAINED LIMIT – The amount specified in Item 3.I.B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

29.     New England Policy 683658 contains the following relevant definitions

**DEFINITIONS**

When used in this policy, the following words and phrases shall have the following meaning:
*        *        *

8

H. OCCURRENCE: With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.

*      *      *

I. PPOPERTY DAMAGE:

The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

*      *      *

L. ULTIMATE NET LOSS:

Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal, appeal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED.

30.    Endorsement No.2 to New England Policy No. 683658 contains the following pollution Exclusion:

**EXCLUSION**
(Contamination or Pollution)

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

9

B.     **The AEIC Umbrella Policy**

31.     AEIC issued Umbrella Policy number A22-8500-266, with effective dates of February 1, 1969, to February 1, 1972, to McCord Corporation (the "AEIC Umbrella Policy"). A copy of the AEIC Umbrella Policy is attached as Exhibit D.

32.     The AEIC Umbrella Policy was brokered in Michigan and issued to McCord at its headquarters located in Detroit, Michigan.

33.     The AEIC Umbrella Policy contains the following Insuring Agreement:

> To indemnify the insured for all sums which the insured shall be obligated to pay by reason of the liability imposed upon him by law or liability assumed by him under contract or agreement for damages, and expenses, all as included in the definition of "ultimate net loss"; because of:
>
> (a) personal injuries as hereinafter defined;
> (b) property damage, as hereinafter defined;
> (c) advertising liability, as hereinafter defined.

34.     The AEIC Umbrella Policy defines "Property Damage" as:

> The term "property damage" shall mean (a) physical injury to, or physical destruction of, tangible property, including the loss of use thereof but excluding all other consequential damages, or (b) injury to or destruction property, including the loss of use thereof, caused by accident.

35.     The AEIC Umbrella Policy defines "Ultimate Net Loss" as:

> The term "ultimate net loss" shall mean the total sum
> which the insured, or any company as his insurer, or both,
> becomes legally obligated to pay as damages because of
> personal injury, property damage, or advertising liability
> claims, either through adjudication or compromise, and
> shall also include hospital, medical and funeral charges
> and all sums paid as salaries, wages, compensation, fees,
> charges and law costs, premiums on attachment or appeal
> bonds, interest on judgments, expenses for doctors, lawyers,
> nurses, and investigators and other persons, and for
> litigation, settlement, adjustment and investigation of claims
> and suits which are paid as a consequence of any occurrence
> covered hereunder, excluding only the salaries of the named insured's or of any
> underlying insurer's permanent employees.
>
> The company shall not be liable for any expenses as

aforesaid when payment of such expenses is included in
other valid and collectible insurance.

36.     The AEIC Umbrella Policy defines "Occurrence" as:

The term "occurrence" shall mean (a) an accident, or (b)
an event, or continuous or repeated exposure to conditions,
which unexpectedly results in personal injury, property
damage, or advertising liability (either alone or in any
combination) during the policy period. With respect to
Coverages I (a) and I (b), except with respect to
Products--Completed Operations Hazards, all personal
injury and property damage (either alone or in combination)
arising out of one event or continuous or repeated
exposure to substantially the same general conditions existing
at or emanating from one premises location shall be
deemed to be one occurrence. With respect to Coverages
I (a) and I (b), all personal injury and property damage
(either alone or in combination) arising out of the
Products--Completed Operations Hazards shall be deemed
to be one occurrence if arising out of one lot of goods or
products prepared or acquired by the named insured or
others trading under his name. With respect to Coverage
I (c), all personal injury and property damage (either
alone or in combination) involving the same injuries
material or act, regardless of the frequency or repetition
thereof, the number or kind of media used, and the number
of claimants, shall be deemed to arise out of one occurrence.

37.     The AEIC Umbrella Policy contains a "Limits of liability" definition as follows:

The company shall only be liable for ultimate net loss in excess of either:
(a) except as provided in subparagraph (b) hereof, the applicable limits of liability of
the policies of underlying insurance set forth in Item 3 of the Declarations; or
(b) as respects each occurrence not covered by such underlying
insurance, or where each occurrence is covered by such
underlying insurance but in recoverable amounts less than
the Underlying Limits set forth in Item 4 of the Declarations,
the amount of ultimate net loss set forth in the Declarations as "Underlying Limits",
but in no event shall the company be liable for an amount in excess of the applicable
limit of liability set forth in Item 5 of the Declarations.

The limit of liability stated in Item 5 of the Declarations as
applicable to "each occurrence" is the total limit of the company's liability under this
policy for ultimate net loss as a result of any one occurrence.

Subject to the limit of liability set forth in Item 5 of the Declarations with respect to
"each occurrence", the limit of liability so set forth as "aggregate" shall be the total
limit of the company's liability under this policy for ultimate net loss:
(1) because of all personal injury and property damage during

each consecutive twelve months of the policy period, arising
out of the Products-Completed Operations Hazards, and
(2) because of all personal injury during each consecutive twelve months of the policy
period sustained from Occupational Disease by any employee of the insured.

In the event of reduction or exhaustion of the aggregate limits
of liability under the policies of underlying insurance by reason
of losses paid thereunder, this policy shall:
(i) in the event of reduction, pay the excess of the reduced
underlying insurance, and
(ii) in the event of exhaustion, continue in force as underlying
insurance,
but nothing in this paragraph shall operate to increase the limits of the company's
liability.

38.     The AEIC Umbrella Policy contains the following "Loss Payable" provision:

Liability under this policy with respect to any occurrence shall not attach unless and
until the insured, or the insured's underlying insurer, shall have paid the amount of
the
underlying limits on account of such occurrence. The insured
shall make a definite claim for any loss for which the company
may be liable under the policy within twelve (12) months after
the insured shall have paid an amount of ultimate net loss in
excess of the amount borne by the insured or after the insured's liability shall have
been fixed and rendered certain either by final judgment against the insured after
actual trial or by written agreement of the insured, the claimant and the company.

If any subsequent payments shall be made by the insured on
account of the same occurrence, additional claims shall be made similarly from time
to time. Such losses shall be due and payable within thirty days after they are
respectively claimed and proven in conformity with this policy.

39.     The AEIC Umbrella Policy requires the "Maintenance of Underlying Insurance" as

follows:

The policy or policies set forth in the Declarations as Underlying Insurance shall be
maintained in full effect during the period this policy remains in force except for any
reduction of the aggregate limits contained therein solely by payment of claims for
occurrences which take place during this policy period. Failure of the insured to
comply with the foregoing shall not invalidate this policy but in the event of such
failure, the company shall only be liable to the same extent as it would have been if the
insured had complied with this condition.

40.     The AEIC Umbrella Policy is amended via Endorsement #1, as follows:

It is understood and agreed that the policy to which this endorsement is attached is
amended to include the following additional Insuring Agreement:

12

Defense, Settlement, Supplementary Payments

As respects occurrences covered under this policy, but not covered under the underlying insurance or under any other collectible insurance, the Company shall:

(a) defend in his name and behalf any suit against the insured alleging liability insured under the provisions of this policy and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company;

(b) pay all premiums on bonds to release attachments for an amount not in excess of the limit of liability of this policy, all premiums on appeal bonds required in any such defended suit but without any obligation to apply for or furnish such bonds, all costs taxed against the insured in any such suit, all expenses incurred by the company and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court that part of such judgment as does not exceed the limit of the company's liability thereon;

(c) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.

The company agrees to pay the amounts incurred under this insuring agreement, except in settlement of claims and suits, in addition to the limit of liability stated in the Declarations, and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in the policy.

\*       \*       \*

## C.   <u>The Wausau Primary Policies</u>

41.   Wausau issued the following primary policies to McCord (the "Wausau Primary Policies"):

| Writing Company | Policy No. | Policy Period |
|---|---|---|
| Wausau | 1721 00 040499 | 1/1/1970 to 1/1/1971 |
| Wausau | 1722 00 040499 | 1/1/1971 to 1/1/1972 |
| Wausau | 1723 00 040499 | 1/1/1972 to 1/1/1973 |
| Wausau | 1724 00 040499 | 1/1/1973 to 1/1/1974 |
| Wausau | 1725 00 040499 | 1/1/1974 to 1/1/1975 |
| Wausau | 1726 00 040499 | 1/1/1975 to 1/1/1976 |
| Wausau | 1727 00 040499 | 1/1/1976 to 1/1/1977 |
| Wausau | 1728 00 040499 | 1/1/1977 to 1/1/1978 |
| Wausau | 1729 00 040499 | 1/1/1978 to 1/1/1979 |

42.   Copies of the Wausau Primary Policies as certified by Wausau are attached hereto as Exhibits E through M.

43.    The Wausau Primary Policies were brokered in Michigan and issued to McCord at its headquarters in Detroit, Michigan.

44.    Each of the Wausau Primary Policies contains the following coverage grants:

**I.    COVERAGE A – BODILY INJURY LIABILITY**
**COVERAGE B – PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or
Coverage B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

45.    The Coverage Schedule for each of the Wausau Primary Policies sets forth "Each Occurrence" Limits of Liability and "Aggregate" Limits of Liability for Coverage A and Coverage B, "subject to all the terms of this policy having reference thereto."

46.    The Each Occurrence Limits of Liability is the total amount that Wausau is obligated to pay for a single "occurrence," whereas the Aggregate Limit of Liability is the total amount that Wausau is obligated to pay for all "occurrences."

47.    Pursuant to Endorsement No. 2 thereto, Wausau Primary Policy No. 1729 00 040499 effective for the period 1/1/1978 to 1/1/1979 (the "1978-1979 Wausau Primary Policy") contains both an "Each Occurrence" and an "Aggregate" Limit of Liability for "property damage" liability.

48.    In contrast to the 1978-1979 Wausau Primary Policy, all other Wausau Primary Policies (the "1970-1978 Wausau Primary Policies") contain the following Limits of Liability

14

provision setting forth Wausau's total liability for all damages because of property damage arising

out of operations as follows:

### III.    LIMITS OF LIABILITY

Regardless of the number of (1) insureds under thus policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the company's liability is limited as follows:

\*          \*          \*

Coverage B – The total liability of the company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule as applicable to "each occurrence".

Subject to the above provision respecting "each occurrence", the total liability of the company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability stated in the schedule as "aggregate":

(1) all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;

\*          \*          \*

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the named insured.

Coverages A and B – For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

49.    Pursuant to the above Limits of Liability provision, Wausau's total liability under

the 1970-1978 Wausau Primary Policies for damages because of property damage arising out of

McCord's operation is subject to an Aggregate Limit of Liability only if the premiums were rated

on a "remuneration" basis.

50.     Schedule 1 contained in each of the 1970 to 1978 Wausau Primary Policies states that premiums for "property damage" liability arising from operations were rated on a "sales" basis, not on a "remuneration" basis.

51.     Nothing in the four corners of the 1970-1978 Wausau Primary Policies states that the premiums for "property damage" liability arising from McCord's operations were rated on a remuneration basis.

52.     Subject to the terms of the Limits of Liability provision, the Wausau's total liability for damages because of property damage arising out of McCord's operations is subject to a separate "Each Occurrence" Limit of Liability in the dollar amount set forth on the Coverage Schedule of each of the 1970-1978 Wausau Primary Policies.

## UNDERLYING CLAIMS

53.     The Underlying Claims involve environmental contamination of property allegedly arising out McCord's historical operations at the following sites: (i) 500 West Harrison Street, Plymouth Indiana (the "Plymouth Site")[1]; (ii) 227 Front Street, Washington, Indiana (the "Washington Site"); and the Lower Neponset River Superfund Site in Boston and Milton, Massachusetts (the "Neponset Superfund Site")[2].

54.     On or about July 7, 2021, the Indiana Department of Environmental Management ("IDEM"), notified McCord's parent or indirect parent corporation, Textron, Inc., of potential environmental liabilities at the Plymouth Site allegedly arising out of McCord's historical operations.   Upon information and belief, McCord and/or its predecessors conducted

---

[1] PIC's involvement in this litigation is limited to the Causes of Action alleged herein regarding only the Plymouth Site.
[2] SPARTA's involvement in this litigation is limited to the Causes of Action alleged herein regarding only the Washington Site and the Neponset Site.

manufacturing operations at the Plymouth Site from 1919 to 1985, and thereafter, other entities continued industrial operations at the Site until approximately 2018.

55.     On or about May 19, 2017, IDEM notified McCord of its potential environmental liabilities at the Washington Site allegedly arising out of McCord's historical operations. Upon information and belief, McCord and or/its predecessors conducted industrial operations at the Washington Site from at least 1951-1977, followed by several other owners and operators.

56.     On or about June 6, 2025, the United States Environmental Protection Agency named McCord as a potentially responsible party with respect the release or threatened release of hazardous substances, pollutants or contaminants at the Neponset Superfund Site. Upon information and belief, McCord and or/its predecessors are alleged to have arranged, as far back as 1979, for the disposal or treatment of hazardous substances at the former Lewis Chemical Company located in Hyde Park, Massachusetts, from which there were alleged release of hazardous substances at the Neponset Superfund Site.

## **THE PRIOR COVERAGE ACTION**

57.     McCord, Wausau, Hartford, AEIC and other insurers previously engaged in coverage litigation in this Court regarding McCord's environmental liabilities at twenty-two other contaminated sites in an action captioned *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.,* Civil Action No. 85-71371, (E.D. Michigan) (the "Prior Coverage Action").

58.     The Prior Coverage Action resulted in series of decisions by the District Court construing the exact same Wausau Primary Policies, Hartford Umbrella Policies and AEIC Umbrella Policy at issue in this action. *See Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.*, *750 F. Supp. 1340*, 1344 (E.D. Mich. 1990) (chart depicting the Wausau Primary Policies, Harford Umbrella Policies and AEIC Umbrella Policy).

17

59.     In the Prior Coverage Action, the District Court held that Michigan law applied based on the fact that the parties agreed that the policies issued to McCord, including the Wausau Primary Policies, were issued to McCord in Michigan, and the place of performance thereunder was in Michigan.  *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.*, 750 F. Supp. 1340, 1346 (E.D. Mich. 1990) ("Because the parties agree that the place of performance is Michigan, that law applies."); *See also Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.*, 702 F. Supp. 1317, 1327 (E.D. Mich. 1988) ("Wausau argues that the applicable law is Michigan law, that the pollution exclusion is valid in Michigan, and is thus applicable to the New Hampshire sites.");.

60.     As to allocation of costs incurred for each site, the District Court held that Michigan law required *pro rata* by time-on-the risk basis.  *Fireman's Fund Insurance Cos. v. Ex-Cell-O Corp.*, 685 F. Supp. 621, 626 (E.D. Mich. 1987) ("An insurer on the risk during the period of alleged exposure is liable for the policyholders' defense in the proportion that the period it was on the risk bears to the total period of alleged exposure.").

## COUNT I – DECLARATORY JUDGMENT
### The 1970-1978 Wausau Primary Policies Do Not Contain PD Aggregate Limits

61.     Plaintiffs hereby reallege and incorporate Paragraphs 1 - 60 of this Complaint as if fully set forth herein.

62.     Coverage, if any, under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy does not attach unless and until the applicable limits of liability of all underlying insurance policies are exhausted, including, but not limited to, the Wausau Primary Policies.

63.     The Underlying Claims involve damages because of alleged property damage arising out of McCord's historical operations the various Sites.

64.     The 1978-1979 Wausau Primary Policy contains both an "Each Occurrence" and an "Aggregate" Limit of Liability for "property damage" liability.

18

65.     In contrast to the 1978-1979 Wausau Primary Policy, the 1970-1978 Wausau Primary Policies are only subject to an Aggregate Limit of Liability for property damage arising out of McCord's operations if the policy premiums were rated on a remuneration basis.

66.     Schedule 1 to each of the 1970-1978 Wausau Primary Policies states that the premiums for said policies were rated on a "sales" basis, not on a remuneration basis.

67.     Wausau's total liability under each of the 1970-1978 Wausau Primary Policies for damages because of property damage arising out of McCord's operations is subject to an "Each Occurrence" Limit of Liability, not an "Aggregate" Limit of Liability.

68.     Wausau has asserted that it owes no further obligation defend or indemnify McCord with respect to the Underlying Claims because it has exhausted the Aggregate Limits of Liability under all of the Wausau Primary Policies.

69.     An actual controversy exists between the parties as to whether the 1970-1978 Wausau Primary Policies contain an "Aggregate" Limit of Liability applicable to the Underlying Claims.

**WHEREFORE**, Plaintiffs, First State Insurance Company, New England Insurance Company, PIC and SPARTA, pray for judgment in their favor and a declaration from this Court as follows:

(a)     Declaring that the 1970-1978 Wausau Primary Policies do not have Aggregate Limits of Liability applicable to damages because of property damage arising out of McCord's operations at each of the Sites at issue in the Underlying Claims;

(b)     Declaring that the Limits of Liability of the Wausau Primary Policies are not exhausted with respect to McCord defense and indemnity for the Underlying Claims;

(c)     Declaring that, if coverage is not otherwise barred, Plaintiffs owe no present duty
to defend, indemnify or otherwise provide coverage under the Hartford Umbrella
Policies and/or the AEIC Umbrella Policy with respect to the Underlying Claims;
and

(d)     Awarding Plaintiffs such other and further relief as the Court may deem appropriate
and just.

## COUNT II – DECLARATORY JUDGMENT
### Proper Exhaustion of Applicable Underlying Primary Coverage

70.     Plaintiffs hereby reallege and incorporate Paragraphs 1 - 69 of this Complaint as if
fully set forth herein.

71.     Coverage, if any, under the Hartford Umbrella Policies and/or the AEIC Umbrella
Policy does not attach unless and until the limit of liability of applicable underlying insurance
policies are properly exhausted, including, but not limited to, the Wausau Primary Policies.

72.     Wausau has asserted that the Wausau Primary Policies were exhausted in whole or
in part by Wausau's payments on behalf of McCord for the Plymouth Site and Washington Site,
and that it owes no further obligation defend or indemnify McCord with respect to any of the
Underlying Claims.

73.     As Wausau successfully argued in the Prior Coverage Action, Michigan law
requires a pro rata by time-on-the-risk basis whereby damages are allocated across each period of
time that property damage was ongoing and continuous.

74.     To the extent that Wausau allocated claim payments made to McCord for the
Plymouth Site, the Washington Site, and/or any other sites that exceeded Wausau's pro rata by
time-on-the-risk share of damages consistent with Michigan law, Wausau has improperly eroded
the applicable limits of liability of the Wausau Primary Policies.

75.     An actual controversy exists between the parties as to whether the applicable Limits of Liability under the Wausau Primary Policies are properly exhausted under well-settled Michigan law that requires allocation of damages for property damage to be spread on a *pro* rata by time-on-the-risk basis.

**WHEREFORE**, Plaintiffs, First State Insurance Company and New England Insurance Company, PIC and SPARTA pray for entry of judgment in their favor and a declaration from this Court as follows:

(a)     Declaring that the applicable Limits of Liability of each of the Wausau Primary Policies are not exhausted;

(b)     Declaring that, if coverage is not otherwise barred, Plaintiffs have no duty under their respective umbrella policies to defend or indemnify McCord for the Underlying Claims unless and until the applicable underlying Limits of Liability for each of the Wausau Primary Policies have been properly exhausted; and

(c)     Awarding Plaintiffs such other and further relief as the Court may deem appropriate and just.

### COUNT VI – DECLARATORY JUDGMENT
### Other Policy Defenses

76.     Plaintiffs hereby reallege and incorporate Paragraphs 1 - 75 of this Complaint as if fully set forth herein.

77.     Regardless of whether the applicable limits of liability for the underlying Wausau Primary Policies are properly exhausted, coverage for the Underlying Claims under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy may nonetheless be barred by various other defenses.

78.     Specifically, Plaintiffs requests that this Court determine and declare that Plaintiffs currently have no, and never had any obligation, under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy or otherwise, to defend or indemnify McCord, or to pay for or reimburse any defense and/or indemnity costs, in connection with the Underlying Claims based on one or more of the following grounds:

(a)     There is no coverage under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy for any injury or damage that does not constitute "property damage" and/or was not caused by an "occurrence" within the meaning of the Hartford Policies and/or the AEIC Umbrella Policy;

(b)     There is no coverage under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy for injury or damage that was expected or intended from the standpoint of the insured or that was caused intentionally by or at the direction of an insured;

(c)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy are only obligated to pay  damages because of property damage during the policy period, and, therefore, there is no coverage under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy for any damages on account of "property damage" which occurred outside the policy period of one or more of the Hartford Umbrella Policies and/or the AEIC Umbrella Policy;

(d)     Coverage is barred under the New England Policy Nos. 681199 and 683658 to the extent that the pollution exclusions in those policies bar coverage for the Underlying Claims;

22

(e)     In the event that Plaintiff(s) is/are found to have any liability with respect to the Underlying Claims, damages must be allocated, according to controlling Michigan law, on a *pro rata* time-on-the-risk basis, including allocation to the insured for any uninsured or under-insured periods where property damage occurs outside of the Hartford Umbrella Policy and/or the AEIC Umbrella Policy periods;;

(f)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage for conduct which is in violation of law or public policy;

(g)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage to the extent that the claims in the Underlying Claims arise from risks or losses known to the insured prior to the inception dates of one or more of the Hartford Policies and/or the AEIC Umbrella Policy;

(h)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage to the extent the acts, conditions, events and damages which form the basis of the claims against the insured were not fortuitous;

(i)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage for fines, penalties, punitive or exemplary damages, or any criminal or malicious acts or omissions of any insured, acting through its servants, agents or employees;

(j)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage for equitable, injunctive or other similar non-monetary relief;

(k)     The Hartford Umbrella Policies and/or the AEIC Umbrella Policy do not provide coverage for sums incurred as a result of any insured's failure to mitigate any alleged damages;

(l)     There is no coverage under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy to the extent that any insured made any voluntary payment and/or assumed any obligation, incurred any expense or made any payment that it was not legally obligated to pay;

(m)     There is no coverage under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy for liabilities incurred after the effective dates of the subject Policy or Policies.

(n)     Coverage is barred to the extent the insured has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy;

(o)     To the extent that any coverage obligations arise under the Hartford Umbrella Policies and/or the AEIC Umbrella Policy, such obligations are subject to all the Hartford Umbrella Policies' and/or the AEIC Umbrella Policy's terms, conditions, and limitations, including, but not limited to, coverage being limited to the stated limits of liability of the Hartford Umbrella Policies and/or the AEIC Umbrella Policy.

**WHEREFORE**, Plaintiffs, First State Insurance Company, New England Insurance Company, Pennsylvania Insurance Company and SPARTA Insurance Company pray for judgment in their favor and a declaration from this Court as follows:

(a)     Declaring that the Hartford Umbrella Policies and/or the AEIC Umbrella Policy have no present coverage obligation for the Underlying Claims;

(b)     Declaring that Hartford does not have any future obligation under the Hartford Umbrella Policies to defend, reimburse defense costs or indemnify McCord in

24

connection with any claims, liabilities, loss or damages relating to the Underlying Claims;

(c)     Declaring that PIC and SPARTA do not have any future obligation under the AEIC Umbrella Policy to defend, reimburse defense costs or indemnify McCord in connection with any claims, liabilities, loss or damages relating to the Underlying Claims; and

(d)     Awarding Plaintiffs such other and further relief as the Court may deem appropriate and just.

Respectfully submitted,

KARBAL | COHEN | ECONOMOU | SILK | DUNNE | LLC

By:     /s/ Wayne S. Karbal
        One of the Attorneys for Plaintiff FIRST
        STATE INSURANCE COMPANY, NEW
        ENGLAND INSURANCE COMPANY

WAYNE S. KARBAL
GERALD E. ZIEBELL
KARBAL COHEN ECONOMOU SILK DUNNE, LLC
200 S. Wacker Drive, Suite 2550
Chicago, Illinois 60606
Tel:    (312) 431-3700
wkarbal@karballaw.com
gziebell@karballaw.com

-and-

PENNSYLVANIA INSURANCE COMPANY
f/k/a Pennsylvania General Insurance Company, as
alleged successor-in-interest for certain limited
purposes to certain liabilities of American
Employers Insurance Company and SPARTA
INSURANCE COMPANY, as successor in interest
to certain liabilities of AMERICAN EMPLOYERS
INSURANCE COMPANY

By: _____ */s/ Joseph B. Royster*_____
One of Its Attorneys

Joseph B. Royster, Attorney No.: 6217542
Weber Gallagher Simpson Stapleton Fires &
Newby LLP
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
joseph.royster@wglaw.com